IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ARBUTUS BIOPHARMA CORP. and GENEVANT SCIENCES GMBH,<br><br>                 Plaintiffs,<br><br>    v.<br><br>PFIZER INC. and BIONTECH SE,<br><br>                 Defendants. | Civil Action No. 2:23-cv-01876-ZNQ<br><br>Jury Trial Demanded<br><br>*Document Filed Electronically* |

**STIPULATION AND ORDER AMENDING THE STIPULATED ORDER GOVERNING DISCOVERY INCLUDING DISCOVERY FO ELECTRONICALLY STORED INFORMATION**

This stipulation is made between Plaintiffs Arbutus Biopharma Corp. and Genevant Sciences GmbH, and Defendants Pfizer Inc. and BioNTech SE (collectively, "the Parties"), by and through their respective undersigned counsel, to amend the Stipulated Order Governing Discovery Including Discovery of Electronically Stored Information ("ESI") (hereinafter, "ESI Order");

WHEREAS, on February 24, 2024, the Parties filed a Proposed ESI Order (Dkt. No. 55-1);

WHEREAS, on March 4, 2024, the Court entered the Parties' ESI Order (Dkt. No. 56);

WHEREAS, now, the Parties wish to amend Section 1.f.ii. of the ESI Order (Dkt. No. 56);

IT IS HEREBY STIPULATED AND AGREED, based on the foregoing and subject to the Court's approval, that:

1.      Section 1.f.ii. of the ESI Order shall be amended to state: "Any documents with redactions on the basis of privilege, such as those marked REDACTED – PRIVILEGED," need not be logged in a Party's privilege log.  Each Party reserves its rights to inquire about the basis for redactions or to ask a producing party to log specific, identified documents," as demonstrated in the attached redlined version of the ESI Order.

IT IS SO STIPULATED on this 11th day of October, 2024.


OF COUNSEL:

Raymond N. Nimrod
Isaac Nesser
Nicola R. Felice
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
raynimrod@quinnemanuel.com
isaacnesser@quinnemanuel.com
nicolafelice@quinnemanuel.com

Kevin P.B. Johnson
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
555 Twin Dolphin Shores, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
kevinjohnson@quinnemanuel.com

Sandra L. Haberny, Ph.D.
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
sandrahaberny@quinnemanuel.com

John Yang
QUINN EMANUEL URQUHART
    & SULLIVAN, LLP
3100 McKinnon St, Suite 1125
Dallas, TX 75201
(469) 902-3600
johnyang@quinnemanuel.com

*Attorneys for Plaintiff Genevant Sciences GmbH*

---

*/s/ Arnold B. Calmann*
Arnold B. Calmann
Katherine A. Escanlar
SAIBER LLC
18 Columbia Turnpike, Suite 200
Florham Park, NJ 07932
(973) 622-3333
abc@saiber.com
kescanlar@saiber.com

*Attorneys for Plaintiffs Arbutus Biopharma Corp. & Genevant Sciences GmbH*

Daralyn J. Durie
Adam R. Brausa
Eric. C. Wiener
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000
ddurie@mofo.com
abrausa@mofo.com
ewiener@mofo.com

Kira A. Davis
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
(213) 892-5200
kiradavis@mofo.com

David. N. Tan
MORRISON & FOERSTER LLP
2100 L. Street, NW, Suite 900
Washington, D.C., 20037
(202) 887-6943
ntan@mofo.com

*Attorneys for Plaintiff Arbutus Biopharma Corp.*

<u>s/ *Liza M. Walsh*</u>
Liza M. Walsh
Mariel L. Belanger
Jessica K. Formichella
Lauren R. Malakoff
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
(973) 757-1100
lwalsh@walsh.law
mbelanger@walsh.law
jformichella@walsh.law
lmalakoff@walsh.law

OF COUNSEL:

Sara Tonnies Horton (*pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
300 North LaSalle Drive
Chicago, Illinois 60654
(312) 728-9040

Michael W. Johnson (*pro hac vice*)
Heather M. Schneider (*pro hac vice*)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

*Attorneys for Defendant/Counterclaimant Pfizer Inc.*

<u>s/ *William P. Deni, Jr.*</u>
William P. Deni, Jr.
J. Brugh Lower
GIBBONS P.C.
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500
wdeni@gibbonslaw.com
jlower@gibbonslaw.com

OF COUNSEL:

Bruce M. Wexler (*pro hac vice*)
Eric W. Dittmann
Isaac S. Ashkenazi
Max H. Yusem
Michael Ryan Meuth
Magdalini Vasiadi
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6000

Simon F. Kung (*pro hac vice*)
PAUL HASTINGS LLP
1117 California Avenue
Palo Alto, California 94304
(650) 320-1800

Raymond W. Stockstill
PAUL HASTINGS LLP
695 Town Center Drive, Seventeenth Floor
Costa Mesa, California 92626
(714) 668-6200

Soyoung Jung
PAUL HASTINGS LLP
515 South Flower Street, Twenty-fifth Floor
Los Angeles, California 90071
(213) 683-6211

Ashley Graham
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
(212) 294-6700

Charles B. Klein
Claire Fundakowski
Jovial Wong
WINSTON & STRAWN LLP
1901 L Street NW
Washington, DC 20036
(202) 282-5000

Alison M. King
David P. Dalke
Ivan Poullaos
Katherine L. Kyman
Kevin J. Boyle
Zoe A. Goldstein
WINSTON & STRAWN LLP
35 W. Wacker Drive
Chicago, IL 60601
(312) 558-5600

Eimeric Reig-Plessis
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
(415) 591-1000

*Attorneys for Defendant/Counterclaimant
BioNTech SE*

SO ORDERED on this _____ day of October 2024

_____

**HON. TONIANNE J. BONGIOVANNI, U.S.M.J.**

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ARBUTUS BIOPHARMA CORP. and
GENEVANT SCIENCES GMBH,

        Plaintiffs/Counterclaim Defendants,

v.

PFIZER INC. and BIONTECH SE,

        Defendants/Counterclaimants.

Civil Action No. 23-1876 (ZNQ) (TJB)

---

## STIPULATED ORDER GOVERNING DISCOVERY INCLUDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION ("ESI")

Plaintiffs and Counterclaim Defendants Arbutus Biopharma Corporation and Genevant Sciences GmbH (collectively, "Plaintiffs") and Defendants and Counterclaimants Pfizer Inc. and BioNTech SE (collectively, "Defendants") (collectively, the "Parties") hereby stipulate and agree to the following protocol ("Protocol") for the production of electronically stored information ("ESI") and paper ("hard copy") documents. Subject to the Discovery Confidentiality Order in this action (ECF No. 54), this Protocol governs all such production in this matter.

1. **General Provisions**

    a. **Non-ESI**. The Parties agree that nothing in this Order changes the Parties' obligations under the Federal Rules of Civil Procedure to search for, collect, and produce non- ESI information. To the extent that third parties may produce documents in this case, the Parties agree to request that such third parties adopt this Protocol. Nothing about such a request to a third party shall be intended to narrow, expand, or otherwise affect the rights of the Parties or the third party to object to any subpoena or document request.

b.      **Cooperation**.  The Parties are expected to reach agreements cooperatively on how to conduct discovery under Fed. R. Civ. P. 26-36 and the Local Civil Rules of the United States District Court for the District of New Jersey.  In the event that the Parties are unable to agree on the parameters and/or timing of discovery, the following default standards shall apply until further order of the Court or the Parties reach agreement.

c.      **Proportionality**.  The Parties are expected to use reasonable, good faith and proportional efforts to preserve, identify, and produce relevant information.  This includes identifying appropriate limits to discovery, including limits on custodians, identification of relevant subject matter, time periods for discovery and other parameters to limit and guide preservation and discovery issues.

d.      **Preservation of Discoverable Information**.  Discovery concerning the preservation and collection efforts of another Party can contribute to unnecessary expense and delay and may inappropriately implicate attorney work product and attorney-client privilege.  The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody, or control.  If there is a reasonable dispute concerning the scope of a Party's preservation or collection efforts, before discovery about such efforts is initiated, the Parties or their counsel shall meet and confer to address the specific stated need for such discovery, its relevance to claims and defenses, its proportionality to the needs of the case, and the availability and suitability of alternative, less burdensome means to obtain the information.

(i)      Absent a showing of good cause by the Requesting Party, the categories of ESI identified in Schedule A attached hereto need not be preserved.

e. **Disaster-Recovery Backup Data**. Consistent with the proportionality standard, and absent a Party's specific written notice for good cause, no Party shall be required to modify or suspend procedures, including rotation of backup media, used in the normal course of business to back up data and systems for disaster recovery purposes. Absent a showing of good cause, such backup media shall be considered to be not reasonably accessible.

f. **Privilege**. Any producing Party shall exclude or redact privileged information as defined in the Discovery Confidentiality Order (ECF No. 54). All producing Parties shall endeavor to provide a Privilege Log no later than no later than thirty (30) days following the deadline for Substantial Completion of Document Production.

(i) The Parties shall include the following categories of information in their privilege logs for any records withheld in full under a claim of privilege, to the extent applicable: (a) the type of document (*e.g.*, letter, memorandum, contract, etc.); (b) a general description of its subject matter; (c) its date last modified or date sent (for email); (d) From (for emails) or Author (for all information other than emails); (e) To, CC, and BCC (for emails, the information from the most recent in-time email will suffice); and (f) the grounds on which the document is being withheld (*e.g.*, "attorney client privilege," "work product," etc.). Each entry shall contain control numbers or other unique identifiers that shall persist for the same document through any revisions or updates to the log.

(ii) ~~D~~Any ~~d~~ocument~~s~~ with redactions on the basis of privilege, such as those marked "REDACTED - PRIVILEGED," ~~must~~ need not be logged in a Party's privilege log. Each Party reserves its rights to inquire about the basis for redaction or to ask a producing party to log specific, identified documents. ~~Each entry corresponding to privilege redactions in a produced document shall identify the Bates number of the redacted document (and if reproduced with different Bates numbers, identify all such Bates numbers that it has been produced with).~~

3

(iii)    **Exclusions**. The Parties' Privilege Logs are not required to include any information regarding information generated after the filing of the complaint, information generated at the direction of Trial Counsel or communications with Trial Counsel, or activities undertaken in compliance with the duty to preserve information, which are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

**2.**    **Initial Disclosures**. By February 29, 2024, each party shall disclose:

a.    **Custodians.** The 10 custodians most likely to have discoverable information in their possession, custody or control, from the most likely to the least likely.[1] The custodians shall be identified by name, title, role in the instant dispute, and the subject matter of the information.

b.    **Non-custodial data sources.**[2] A list of the non-custodial data sources that are most likely to contain non-duplicative discoverable information for preservation and production consideration, from the most likely to the least likely.

c.    **Notice.** The Parties shall identify any issues relating to:

(i)    Any ESI (by type, date, custodian, electronic system or other criteria) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(C)(i).

(ii)    Production of information subject to privacy protections, including information that may need to be produced from outside of the United States and subject to foreign

---

[1] Absent good cause, a party shall not be required to identify more than 10 ESI custodians. Each party shall identify no fewer than 7 ESI custodians most likely to have discoverable information in their possession, custody or control. If a party discloses fewer than 10 ESI custodians, the parties may confer in good faith as discovery continues to determine whether there are additional custodians likely to have non-cumulative discoverable information who should be disclosed for that party. If a dispute regarding the adequacy of a party's disclosure of ESI custodians cannot be resolved through good faith efforts to meet and confer, the dispute may be brought to the Court through the procedures outlined in Local Civil Rule 37.1.

[2] That is, a system or container that stores ESI, but over which an individual custodian does not organize, manage or maintain the ESI in the system or container (e.g., enterprise system or database).

laws. To the extent that any Party learns, at a later date, of issues relating to the production of information subject to privacy protections, the Producing Party shall notify the Requesting Party of those issues within a reasonable time and the Parties shall meet and confer to attempt to resolve those issues. If the Parties are unable to agree to the production of information subject to privacy protections after meeting and conferring, the Requesting Party may move the Court for such production.

**3.      Specific E-Discovery Issues.**

      a.      **Documents outside the United States**. Each Party shall produce responsive, non-privileged information that can be located after a reasonably diligent search of the custodial and non-custodial sources to be identified pursuant to Section 2(a)-(b) irrespective of whether it may need to be produced from outside of the United States unless the Producing Party has identified an issue with the production of such information pursuant to Section 2(c)(ii).

      b.      **De-Duplication**. Each party shall be permitted to use electronic de-duplication software to eliminate multiple copies of identical documents (including emails) across custodians. For all records that are subject to de-duplication, all custodian names and paths for each instance are to be produced in accompanying metadata. Data should be de-duplicated on a family level, *i.e.*, if a document is loaded and is also attached to an email, both the document and the email will be produced.

      c.      **ESI Search Methodology**. The Parties may use reasonably tailored search terms to locate potentially responsive ESI. If the Producing Party elects to use search terms to locate potentially responsive ESI, it shall disclose the search terms to the Requesting Party. Absent a showing of good cause, a Requesting Party may request no more than ten (10) additional terms to be used in connection with the electronic search(es) of the Producing Party's custodial data, with

these terms to be provided no later than fourteen (14) days after the Producing Party discloses its search terms. The search terms proposed by the Requesting Party shall be reasonable and narrowly tailored to the particular issues in the case. Focused terms, rather than over-broad terms (*e.g.*, product and company names), shall be employed. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production. The Parties acknowledge that there may be certain instances where the volume of ESI is particularly high. The Parties agree that in the event of a claim that a particular search term or combination of terms is too burdensome, the Parties will exchange information showing the number of "hits" for each such term or combination of terms and agree to work in good faith to resolve such issues on a case-by-case basis. The Parties shall meet and confer on any modifications to a Requesting Party's proposed terms (including with respect to translation issues) needed to improve their efficacy in locating discoverable information and in excluding information that is not proportional to the needs of the case under Fed. R. Civ. P. 26(b), including modifying terms where the burden or expense of the proposed terms outweighs the likely benefit. The Producing Party shall search the emails and other ESI maintained by the custodians identified in accordance with paragraph 2(a). Nothing in this provision substitutes the obligations of a party to otherwise use search terms that are reasonably tailored to identify non-privileged, responsive documents. Additionally, nothing in this provision obligates any Party to use search terms to locate potentially responsive ESI. To the extent that any Party elects to use search terms to locate potentially responsive ESI, that Party also reserves the right to conduct its own targeted

collections without using such search terms in order to identify and collect any particular materials sought in discovery for which search terms are not an efficient method of collection. The Producing Party shall retain the presumptive right to manage and control review of its data files, including the right to use an advanced technology-assisted review platform. Nothing in this Order precludes a Party from requesting information regarding another Party's search methodology to the extent necessary. Moreover, each Party reserves its rights to seek the Court's intervention to the extent it believes there are deficiencies in another Party's production.

      d.    **Email Threading**. Email threads are email communications that include other email communications that also may exist separately in the Party's electronic document collection. A most-inclusive email is one that contains unique content and all the lesser-included emails, including attachments, for that branch of the email thread. The Parties agree that removal of available lesser-included emails from potential production will reduce all Parties' costs of document review, production, and litigation-support hosting, and, when producing the most-inclusive email in a thread, the Parties may, but need not, also produce lesser-included emails in the thread, provided that the use of threading must not serve to obscure whether a recipient received an attachment.

      e.    **Format**. To the extent practicable, ESI and non-ESI shall be produced to the Requesting Party as text searchable image files, except as provided in Sections 3.f and 3.g. When a text-searchable image file is produced, the Producing Party must preserve the integrity of the underlying ESI, *i.e*., the original formatting and metadata, to the extent such metadata exists *(see infra* Section 3.j) and, where applicable, the revision history. Unless the parties mutually agree to produce documents in an alternative format for certain document types, ESI and non-ESI shall be produced to the Requesting Party in the following format: single page non-searchable TIFF images and associated multi-page text files containing extracted text or OCR with Concordance and

Opticon load files containing all requisite information including relevant metadata as identified in Section 3.j. All productions will include these additional specifications: (1) document-level .txt files: the .txt file shall contain the extracted full text of the original document if available and OCR text shall be provided instead if extracted text is not available or if the document has been redacted; and (2) Bates number branding and Confidentiality designation (if any) on the face of the image. If word processing files, including without limitation Microsoft Word files (*.doc and *.docx), are produced in *.tif image format, such *.tif images will display tracked changes, comments, and hidden text. If presentation files, including without limitation Microsoft PowerPoint files (*.ppt and *.pptx), are produced in *.tif image format, such *.tif images will display comments, hidden slides, speakers' notes, and similar data in such files.

      f.      **Native Files**. The Parties may produce electronic presentations (*e.g.*, PowerPoint), electronic spreadsheets (*e.g.,* Excel), database files (*e.g.,* Access), SAS files, audio files, video files, and files that lack utility when converted to image format, such as structural data (*e.g.*, .pdb files) or DNA sequence chromatograms (*e.g.*, .abi files) in Native format along with extracted text and Metadata fields identified in Section 3.j below, and produced as follows: the Native document shall be renamed with a Bates Number, and should be linked directly to its corresponding record in the load file using the NATIVE LINK field. In addition to a Bates number, all Native files shall include the confidentiality designation of the document as a metadata field. For each document produced in its Native format, a Bates-numbered TIFF image placeholder will accompany the Native file. The placeholder shall contain language indicating the document was produced in Native form and include the applicable Bates endorsement and confidentiality designation. Moreover, if production in Native form is necessary to decipher the meaning, context, or content of a document produced in TIFF, the producing Party will honor reasonable requests made in good

faith for either the production of the original document for inspection or production of the document in Native format. To the extent that either Party believes that native files should be produced for a specific document or class of documents not required to be produced in native format pursuant to this paragraph or to the extent records do not easily conform to native or TIFF format (*i.e.*, structured data), the Parties should meet and confer in good faith. If such files are not produced in their native formats, a Party may make request, for good cause and subject to the proportionality standard, production of specifically identified documents in their native format. If the request for native files by the Receiving Party imposes an unreasonable or undue burden on the Producing Party, the Producing Party shall notify the Receiving Party of the objection and the parties shall meet and confer in good faith. For clarity, absent good cause, the parties will not be required to produce in native format PowerPoint or other slide deck/presentation files.

g.      **Color**.  Documents or ESI containing color need not be produced initially in color. However, if an original document or ESI item contains color markings, then the requesting Party may, in good faith, make reasonable and proportional requests that the document or ESI item be produced in its original colors. For such documents, the requesting Party shall provide a list of Bates numbers or Bates range of the imaged documents sought to be produced in color. The production of documents and/or ESI in color shall be made in single-page JPEG or TIFF format.

h.      **Confidentiality Designations**.  If a particular document has a confidentiality designation pursuant to the Discovery Confidentiality Order (ECF No. 54), the confidentiality designation shall be placed on the face of each page of the document so as not to interfere with or obscure any information originally appearing in the document.

i.      **Exhibits**.  When submitting exhibits, the Parties shall limit their usage of documents stamped "CONFIDENTIAL" and "HIGHLY CONFIDENTIAL" to the cited portions

to prevent the need to redact information deemed CONFIDENTIAL and HIGHLY CONFIDENTIAL INFORMATION under the Discovery Confidentiality Order (ECF No. 54).

     j.     **Metadata Fields**. The Parties are only obligated to provide the following metadata for all ESI produced, to the extent such metadata exists and is not privileged: Custodian(s), File Path(s), Email Subject, Conversation Index, From, To, CC, BCC, Date Sent, Time Sent, Date Received, Time Received, Filename, Author, Date and Time Created, Date and time Modified, MD5 Hash, File Size, File Extension, Control Number Begin, Control Number End, Attachment Range, Attachment Begin, Attachment End (or the equivalent thereof), Confidentiality and Basis for Withholding. Metadata such as "Email Subject," "File Path," "FileName," and "DocText" may be redacted for privilege.

     k.     **Non-Responsive Attachments**. The parties agree that fully non-responsive attachments to responsive parent documents need not be produced. For such fully nonresponsive attachments, a placeholder slip-sheet endorsed "Withheld Non-Responsive" will be produced to capture the family relationship. If any document in a document family is responsive (*e.g*., an attachment to an email), the parent document in the family shall be produced without regard to whether it is independently responsive. The parties will make relevancy and production determinations for hard copy documents at the document level.

     l.     **Redactions**. Absent agreement between the Parties to be considered on a case-by-case basis, the Parties are not permitted to redact responsive or partially responsive documents for non-responsiveness In addition, the Producing Party may redact, from any image, text file, metadata field, and/or native file, information that is protected from disclosure by any applicable privilege or immunity law or regulation, including but not limited to information protected by attorney- client privilege, work product doctrine, joint defense work product doctrine, individually

identifiable health information, or personal identifying information. Absent a showing of good cause by the Producing Party, names and email addresses of individuals shall not be redacted. The basis of each redaction shall be clearly marked on the face of the redaction as REDACTED - PRIVILEGE, or REDACTED - PERSONAL INFORMATION. The parties agree to meet and confer in good faith as necessary to limit the use of any such redactions.

m.  **Production Rules**. Due to the contextual relationship of electronic documents, the Parties will maintain family relationships (the association between attachments and their parent document) for electronic data. The Parties shall take reasonable steps to ensure that family relationships within a document family are preserved. The Parties agree that completely privileged or nonresponsive family members of responsive documents will be identified with slip-sheets.

n.  **Corrupt or Inaccessible Files**. Certain files may be inaccessible due to password protection, corruption, or unreadable document formats. If reasonable efforts to obtain useful images or accessible native versions of these files are unsuccessful, such documents may be withheld. Corrupt or inaccessible files that are part of a responsive family shall be identified with slip-sheets; for such documents, all metadata that is available will be provided.

o.  **Regulatory Files**.

(i)  The Parties agree that no Party need produce in the first instance Module 5 files from any Biologics License Application or Emergency Use Authorization that is otherwise produced in this litigation. Module 5 includes Clinical Study Reports that include individually identifiable health information of patients who took part in clinical studies. This limitation is intended to safeguard that individually identifiable health information and/or avoid any burdensome redaction process related thereto. This limitation should not apply to any summaries of clinical information as detailed in, for example, Module 2 of a Biologics License Application,

which the Parties agree to produce. The Parties agree to revisit this limitation on producing Module 5 information should good cause arise.

        (ii)     To the extent either Party identifies any additional portions of the Biologics License Applications or Emergency Use Authorization that includes individually identifiable health information, the Party may choose to initially exclude any such portions from production. If either Party chooses to exclude on this basis, it will promptly identify such portions to the Party to whom documents are produced, and the Parties agree to meet and confer regarding whether those portions need to be produced, taking into account the relevance of the excluded portions and the burden of redacting individually identifiable health information from those portions.

      p.    **Third-Party Documents**

The Parties agree that any Party that produces documents produced to it by a third party, such as in response to a subpoena, shall produce such documents in the format in which they were produced by the third party. Nothing in this section changes the Parties' obligations with respect to third party confidentiality.

## 4.    Documents that Exist Only in Hard Copy (Paper) Form

A Party may produce documents that exist in the normal course of business only in hard copy form either (a) in their original hard copy form or (b) scanned and produced, redacted as necessary. The scanning of original hard copy documents does not otherwise require that the scanned images be treated as ESI, including with respect to the metadata discussed in Section 3.j above. However, scanned copies must be OCR'd with text provided as discussed in Section 3.e above.

SO ORDERED this _____ 4th _____ day of _____ March _____, 2024.


                                        s/Tonianne J. Bongiovanni
                                        _____

                                        Hon. Tonianne J. Bongiovanni, U.S.M.J.

**STIPULATED AND AGREED TO BY:**

Dated: February 23, 2024

OF COUNSEL:

Raymond N. Nimrod
Isaac Nesser
Nicola R. Felice
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
raynimrod@quinnemanuel.com
isaacnesser@quinnemanuel.com
nicolafelice@quinnemanuel.com

Kevin P.B. Johnson
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
555 Twin Dolphin Shores, 5th Floor
Redwood Shores, CA 94065
(650) 801-5000
kevinjohnson@quinnemanuel.com

Sandra L. Haberny, Ph.D.
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000
sandrahaberny@quinnemanuel.com

John Yang
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
3100 McKinnon St, Suite 1125
Dallas, TX 75201
(469) 902-3600
johnyang@quinnemanuel.com

*Attorneys for Plaintiff Genevant Sciences
GmbH*

*/s/ Arnold B. Calmann*
Arnold B. Calmann
Katherine A. Escanlar
SAIBER LLC
One Gateway Center, 9th Floor
Newark, NJ 07102-5308
(973) 622-3333
abc@saiber.com
kescanlar@saiber.com

*Attorneys for Plaintiffs Arbutus Biopharma
Corp. & Genevant Sciences GmbH*

Daralyn J. Durie
Adam R. Brausa
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(415) 268-7000
ddurie@mofo.com
abrausa@mofo.com

Kira A. Davis
MORRISON & FOERSTER LLP
707 Wilshire Boulevard
Los Angeles, CA 90017-3543
(213) 892-5200
kiradavis@mofo.com

*Attorneys for Plaintiff Arbutus Biopharma
Corp.*

_s/ Liza M. Walsh_
Liza M. Walsh
Mariel L. Belanger
Jessica K. Formichella
Lauren R. Malakoff
WALSH PIZZI O'REILLY FALANGA LLP
Three Gateway Center
100 Mulberry Street, 15th Floor
Newark, New Jersey 07102
(973) 757-1100
lwalsh@walsh.law
mbelanger@walsh.law
jformichella@walsh.law
lmalakoff@walsh.law

OF COUNSEL:

Sara Tonnies Horton (_pro hac vice_)
WILLKIE FARR & GALLAGHER LLP
300 North LaSalle Drive
Chicago, Illinois 60654
(312) 728-9040

Michael W. Johnson (_pro hac vice_)
Heather M. Schneider (_pro hac vice_)
WILLKIE FARR & GALLAGHER LLP
787 Seventh Avenue
New York, New York 10019
(212) 728-8000

_Attorneys for Defendant/Counterclaimant_
_Pfizer Inc._

_s/ William P. Deni, Jr._
William P. Deni, Jr.
J. Brugh Lower
GIBBONS P.C.
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500
wdeni@gibbonslaw.com
jlower@gibbonslaw.com

OF COUNSEL:

Bruce M. Wexler (_pro hac vice_)
Eric W. Dittmann
Isaac S. Ashkenazi
PAUL HASTINGS LLP
200 Park Avenue
New York, New York 10166
(212) 318-6000

Simon F. Kung (_pro hac vice_)
PAUL HASTINGS LLP
1117 California Avenue
Palo Alto, California 94304
(650) 320-1800

_Attorneys for Defendant/Counterclaimant_
_BioNTech SE_

15

# SCHEDULE A

1.  Deleted, slack, fragmented, or other data only accessible by forensics.

2.  Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

3.  On-line access data such as temporary internet files, history, cache, cookies, and the like.

4.  Data in metadata fields that are frequently updated automatically, such as last-opened dates.

5.  Back-up data that are substantially duplicative of data that are more accessible elsewhere.

6.  Voice messages.

7.  Instant messages that are not ordinarily printed or maintained in a server dedicated to instant messaging.

8.  Electronic mail or pin-to-pin messages sent to or from mobile devices (*e.g*., iPhone and Blackberry devices), provided that a copy of such mail is routinely saved elsewhere.

9.  Other electronic data stored on a mobile device, such as calendar or contact data or notes, provided that a copy of such information is routinely saved elsewhere.

10. Logs of calls made from mobile devices.

11. Server, system or network logs.

12. Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

13. Data remaining from systems no longer in use that is unintelligible on the systems in use.