

121 UNION AVENUE
MIDDLESEX, NEW JERSEY 08846
PHONE:   908.626.0622

**JAMES S. RICHTER**
Of Counsel
(201) 874-7325 (m)
jrichter@midlige-richter.com

July 31, 2026

**BY ECF AND EMAIL**

Honorable Tonianne J. Bongiovanni, U.S.M.J.
United States District Court
Clarkson S. Fisher Federal Building & U.S. Courthouse
402 E. State Street
Trenton, New Jersey 08608

> **Re:**  *Arbutus Biopharma Corp. and Genevant Sciences GmbH v. Pfizer Inc. and BioNTech SE*, **Civil Action No. 23-1876 (ZNQ)(TJB)**

Dear Judge Bongiovanni:

This firm represents Plaintiffs in the above-referenced matter, along with Quinn Emanuel Urquhart & Sullivan, LLP, co-counsel for Genevant Sciences GmbH, and Morrison & Foerster LLP, co-counsel for Arbutus Biopharma Corporation.

We write on behalf of Plaintiffs in response to Your Honor's request for a follow-up letter two weeks after the July 17, 2026 hearing regarding Defendants' December 3, 2025 motion to compel (1) documents from certain custodians, (2) meeting minute appendices, and (3) documents from Plaintiffs' privilege log (ECF Nos. 268, 281).  Ex. 1, 7/17 Hearing Tr., at 65:19-66:1.  During the hearing Your Honor identified two subjects of Defendants' motion and directed Defendants to:

> (1)     propound "specific targeted requests to what [Defendants] thought was in Ms. [Janet] Shaw's file" (Ex. 1, 7/17 Hearing Tr., at 9:16-21, 10:21-11:13), and
>
> (2)     "identify as few as possible" of Plaintiffs' privilege log entries concerning Mr. Pete Zorn with privilege descriptions or attorney identifiers for Plaintiffs to "endeavor to provide more specificity" (Ex. 1, 7/17 Hearing Tr., at 18-9-20:5).

It has been two weeks since the July 17, 2026 video conference, and Defendants have not raised either issue with Plaintiffs.  Thus, it appears the remaining issues raised by Defendants' December 3, 2025 motion to compel have been resolved in light of Defendants' inaction and acknowledgement that their requests for meeting minute appendices and Victor Knopov's custodial file are moot.  Ex. 1, 7/17 Hearing Tr., at 5:10-25.

For this reason, Plaintiffs respectfully request that the Court enter an order denying Defendants' December 3, 2025 motion to compel (ECF No. 268) as moot.

Honorable Tonianne J. Bongiovanni, U.S.M.J.                                July 31, 2026

Page 2

We appreciate the Court's consideration and continued assistance in this matter.

Respectfully submitted,

*s/ James S. Richter*

James S. Richter

Cc: All Counsel of Record (by ECF)

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**TRENTON DIVISION**

ARBUTUS PHARMA CORP., *et al.,*  ) Case No. 3:23-cv-01876-ZNQ-TJB
                                 )
     Plaintiff,                  ) Courtroom No. 6E
                                 ) Clarkson S. Fisher Building
v.                               ) & U.S. Courthouse
                                 ) 402 East State Street
PFIZER INC., *et al.,*           ) Trenton, New Jersey 08608
                                 )
     Defendants.                 ) July 17, 2026
                                 ) 1:00 p.m.

              TRANSCRIPT OF CASE MANAGEMENT CONFERENCE
            BEFORE HONORABLE TONIANNE J. BONGIOVANNI
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES VIA MICROSOFT TEAMS:

For the Plaintiffs,      Midlige Richter LLC
Arbutus Pharma Corp.     By: JAMES S. RICHTER, ESQ.
and Genevant Sciences    645 Martinsville Road
GmbH:                    Basking Ridge, NJ 07920

For the Plaintiff,       Quinn Emanuel Urquhart & Sullivan LLP
Genevant Sciences GmbH:  By:  F. DOMINIC CERRITO, ESQ.
                              FRANK C. CALVOSA, ESQ.
                              ERIC STOPS, ESQ.
                              LUKE H. PHILLIPS, ESQ.
                         295 5th Avenue, 9th Floor
                         New York, New York 10016

ESR/Courtroom Deputy:    John Moller

TRANSCRIPTION SERVICE:   TRANSCRIPTS PLUS, INC.
                         435 Riverview Circle
                         New Hope, Pennsylvania 18938
                         Telephone:  215-862-1115
                         e-mail CourtTranscripts@aol.com

     Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.

2

APPEARANCES VIA MICROSOFT TEAMS:
(continued)

For the Plaintiff,        Morrison & Foerster LLP
Arbutus Pharma Corp:      By: ADAM R. BRAUSA, ESQ.
                          425 Market Street
                          San Francisco, CA 94105-2482

For the Defendant,        Walsh Pizzi O'Reilly Falanga LLP
Pfizer:                   By: LIZA WALSH, ESQ.
                          3 Gateway Center
                          100 Mulberry Street
                          15th floor
                          Newark, NJ 07102

                          Willkie Farr & Gallagher LLP
                          By:  SARA T. HORTON, ESQ.
                          300 North LaSalle Drive
                          Chicago, IL 60654-3406

For Defendant,            Gibbons PC
BioNTech SE:              By: WILLIAM DENI, ESQ.
                          One Gateway Center
                          Newark, NJ 07102

                          Winston Taylor
                          By:  CLAIRE FUNDAKOWSKI, ESQ.
                               CHARLES B. KLEIN, ESQ.
                          1901 L Street NW
                          Washington, DC 20036

                          Winston Taylor
                          By: ALISON KING, ESQ.
                          35 W. Wacker Drive
                          Chicago, IL 60601-9703

   (Additional attorneys were present although appearances were
                  not placed on the record)

3

THE COURT:  Thanks everyone for being available.  I know there are a number of issues that you have been waiting patiently for me to address.  And let me just start off by mentioning that the formal motions, I am going to -- I'm not going to address today.  So those have to do with the defendants' request to amend the invalidity contention, plaintiffs' request to amend the infringement contentions.  So I'm going to deal with those other issues that were, I think, entirely presented to me in letter fashion.

So I'd ask that whoever is speaking behalf of the parties, that you identify yourself at the outset.  And if someone else is going to also chime in, if you could identify yourself, as well.  Otherwise we'll just assume that one person is taking the lead.

So I guess let's get to it.  I'm going to start with the issue that pertains to -- I guess, it's combined in one letter, the issues regarding the documents from certain custodians, the minute appendices, and the privilege log.

So dealing with the appendices, just to clarify if I understand at the end of all of this discussion, whether it's relevant, not relevant, burdensome.  If I understand that the plaintiff has mentioned that there are -- none of the appendices prior to 2002 have been located.  I don't believe that the defendant has suggested that they had a duty to preserve prior to 2004.

4

So the question as to that time frame is why isn't -- if that's so, why isn't the plaintiffs' representation sufficient?

So let me first confirm from the plaintiff that I have that correct, that there is nothing prior to 2002.  And I guess while I'm babbling, that there is one appendice that seems to be missing from the years 2002 to 2007.

MR. PHILLIPS:  Yes, Your Honor.  Luke Phillips from Quinn Emanuel on behalf of plaintiffs.

That is correct.  You've -- you have the facts correct there.

THE COURT:  Mr. Phillips, is it you?  I can't hear you, and maybe it's me.

MR. PHILLIPS:  Apologies, Your Honor.

THE COURT:  Bear with me.

MR. STOPS:  You seem audible, Luke.

THE COURT:  Okay, got it.

MR. PHILLIPS:  Okay.  Your Honor, can you hear me now?

THE COURT:  Yes, I can; thank you.

MR. PHILLIPS:  Okay.

THE COURT:  I'm sorry, Mr. Phillips.

MR. PHILLIPS:  Luke Phillips on behalf of plaintiffs.

I was just saying, Your Honor, that that's correct.  The missing appendices are almost exclusively from 2001, with a

5

couple from 2002.

THE COURT:  Okay, and let me then turn to the defendants.  What concern do you have about their -- the search that they conducted or their response?

MS. FUNDAKOWSKI:  Yes, Your Honor, this is Claire Fundakowski from Winston Taylor on behalf of defendants.  Can you hear me all right?

THE COURT:  I can, yes.

MS. FUNDAKOWSKI:  Thank you.

So we are prepared to narrow the scope of what we're requesting through this motion.

These appendices are highly relevant to many issues in this case, particularly our pending motion for inventorship, and conception, and reduction to practice.  But as Your Honor has noted, through this briefing process and in plaintiffs' opposition, they have confirmed that those missing appendices simply do not exist.  So there isn't too much more that we feel we can do at this point to try to push for appendices that do not exist.

And just to kind of streamline the rest of what we're seeking, to direct Your Honor, and I can go ahead and argue it, or if you have questions.  I think -- because both those appendices are missing, and plaintiffs have represented that the custodial file for Victor Knopov is not available, I think we, unfortunately, have nothing else to push for there.

6

And instead, we really think that, particularly in view of the incomplete production that we have received, and the high relevance of Janet Shaw to these issues, this just makes it even more important that the remaining custodial file of Janet Shaw's documents that plaintiffs do have, but they contend lacks relevance, that those documents are produced.

THE COURT:  Okay.  As to Janet Shaw, again, if I understand correctly, meaning if my notes -- if I jotted my notes accurately, Shaw was an employee from 2001 to 2018. They've done a search, and the plaintiffs contend that there aren't any lab notebooks, which I think is what defendants were most interested in.  And then the response to the remaining documents that they found in Janet Shaw's file is that they're not responsive.

So let me turn first, again, to Mr. Phillips, confirm what I gave stated is accurate in terms of your search and your production.

MR. PHILLIPS:  That's absolutely accurate, Your Honor.  And as stated in our letter, I think, though, they point to some delay of us producing these documents, I think that's entirely explained by the fact that Ms. Shaw changed her name, and once we realized that she had changed her name, we located her file, reviewed the documents, and produced responsive documents.  And those did not include the lab notebooks.

7

THE COURT: Okay. And I think, if I understand the papers, as well, that, Mr. Phillips, your client, or you on behalf of your client, did not confirm whether or not lab notebooks actually ever existed. Is that so?

MR. PHILLIPS: That is correct, Your Honor. We do not feel that they have met their burden of showing that we had a duty to preserve these lab notebooks, which is what warrants such discovery upon discovery, as they themselves have asserted in this litigation in a separate context, as noted in our letter.

THE COURT: Okay. Let me turn then back to defendant on Ms. Shaw. What can I do for you?

MS. FUNDAKOWSKI: Yes, thank you, Your Honor.

And I think what this really boils down to is a difference of opinion between the parties on what is relevant. I think we have a much broader understanding of relevance here. Plaintiffs have made some arguments, for example, that Janet Shaw is not a named inventor on any of the patents in suit. But as we've provided in our briefing, there are -- it's clear from the documents that Janice Shaw was working closely with the named inventors.

There -- it was a very small company back in 2002. And some of our critical evidence relating to our pending motion to amend, to add inventorship, for example, shows that Janet Shaw was one of just a handful of individuals who

attended the meetings where the named inventors decided to move forward with copying Dr. Maurer's process. She attended the lab meetings with the named inventors regularly for many years throughout her time at Tekmira, Protiva, Inex, the various different companies that are predecessors to the plaintiffs.

And as relevant to the missing meeting minutes, we also know that she was involved with compiling those minutes. That's, for example, we flagged in Exhibits K through M to our letter brief, the named inventors were communicating with her excerpts that she used with the minutes. And we just -- we believe that she was so closely involved with the conception and reduction to practice, we -- we -- there's no dispute that there are missing appendices here and there are documents that have not been produced.

We think that the fact that plaintiffs have already collected these documents, they've said they've apparently reviewed them for relevance, and they've made a small production. We just simply think that if there are search terms that are hitting on this production, what's really the burden to plaintiffs producing this?

And I'll just flag one example of our difference of opinion on relevance, and we noted this in our briefing. But there is -- as we were going back and forth between the missing appendices, plaintiffs originally only produced 75 appendices, and they really reiterated to us that all the remaining

appendices were not relevant.

When they later produced nearly 600 additional appendices -- and this was over six months after us -- after we had initially asked for them, some of the appendices were even -- they corresponded to figures in the 2002 patent in suit. And this is the type of -- maybe to the plaintiffs, it's not that relevant, but for us, as we're trying to piece together the story and what this conception story really looks like, these documents are relevant. And we think that plaintiffs should be producing them.

THE COURT: Okay. I'm hesitant to require what I would view as discovery about discovery. As we know, we rely on counsel's veracity when you work with your client to find information that's relevant. I don't have the specific requests, or the language of your requests, in front of me, but I would imagine that you made specific targeted requests to what you thought was in Ms. Shaw's file. And if you didn't, I'd be happy to have you propound those questions upon plaintiff, narrowing down based on what you've just outlined. That based on her involvement, you believe there should be information that's related to X, Y, and Z.

And then if plaintiff responds that there is nothing responsive or nothing in the file, no documents that relate to those subject matters, then I think that's where we leave it, regardless of what search terms are going to hit within her

10

file.  That would be my suggestion.

MR. PHILLIPS:  Your Honor, that's fine with plaintiffs.  I just want to briefly note just a couple of things.

First, we have produced all meeting minutes that were in Ms. Shaw's file.

All the appendices that we separately produced to defendants were located in hard copy outside her file in literally boxes in a warehouse.

And I don't want to get into a tit-for-tat over the timing of everything, but I think Your Honor will appreciate that a lot of the documents being requested are, at this point, over 20 years old.  And so locating these documents is an arduous task, and we have undergone that arduous task, so I just want to briefly note that.

THE COURT:  Okay.

MR. PHILLIPS:  But we're --

THE COURT:  Be --

MR. PHILLIPS:  But we're happy to continue to receive the -- to proceed the way Your Honor has just suggested.

THE COURT:  Okay.  Yeah, in this instance, the defendants are not challenging that you haven't conducted the search.  They're accepting basically that you've conducted your search and that due to age, whatever other issues, that the documents no longer exist or you do not have access to them.

11

The question here is now that you have Ms. Shaw's file, is there anything in there that's responsive? Defendants are concerned that you may have a more narrow view. So, again, I think the approach to have defendants make some tweaks, if you need to, to your request.

And what I would offer to the plaintiffs is if you have any question or concern about the interpretation of relevance, and whether or not your view may be narrower than the defendants, based on what they've been alleging, I'm happy to conduct an in-camera review. I know I'm not supposed to be as -- I'm not supposed to suggest that under the case law, but I have found that that is often the easiest way and the most efficient way to put these issues to rest.

Okay, and then you've already gone through Victor Knopov. So we've -- I think the next part combined to this has to do with the privilege log. And I think we -- just so we start on the same page, I would think we would all recognize that the title of an individual is not the -- is not what really triggers whether or not the protection is appropriate. So whether or not Pete Zorn was titled as legal officer or not, he still could have been acting in a legal capacity providing legal advice.

So let me turn to the defendants and hear what your concerns are regarding him and the designations.

And the one other comment I'll make is plaintiffs

12

have highlighted or contend that some of the more — I'll use the phrase — generic designations include legal advice regarding product development, legal advice regarding suppliers and launch, legal advice regarding press releases, etc., and that they are not any -- they're not providing anything different in terms of the description than the defendants have.

MS. FUNDAKOWSKI:  Thank you, Your Honor.

Yes, so I'll start with some of the entries relating to Pete Zorn.  And, of course, we agree with you, Your Honor, we're not trying to argue that Pete Zorn could not have been offering legal advice before his official title.  His title as CLO is what plaintiffs had identified to us during negotiations, so that is why we identified that.

But the main problem that we see here is we do think the entries are too high-level.  And we can compare the examples that Your Honor just flagged.  There's a lot of "and/or" in here in their entries where it's unclear to us if Pete Zorn is offering legal advice, receiving legal advice, or if it's business related.

And I can identify some examples.  There are many examples that say, for example, "Document, email, and/or attachment reflecting and/or seeking legal advice related to business development."  And do not even include Pete Zorn on the email, but list Pete Zorn as another attorney.  And those

13

examples are 78, 96, 79, 51, for example.

There are other entries that list him as the attorney reflecting and/or seeking legal advice relating to patent applications.

So, again, is he providing legal advice?  Is he seeking it?  Which is compounded by the fact that Mr. Zorn is not a patent lawyer.  And those entries, for example, are 4092, 4921.

We think there's a lot of ambiguity throughout the priv log where there's a lot of and/or.  We can't really properly assess what the claim of privilege really is.  And at a minimum, we think plaintiffs should be compelled to update their privilege log entries to provide more specificity.  We've tried to negotiate this.  And they -- plaintiffs, to their credit, did provide an updated log, but it just did not address many of our concerns.

And I do think our logs are more detailed.  They provide more of a nexus to an actual attorney.  And I think there's a lot less and/ors in there to make it more clear who we're saying is providing the legal advice.

And just to back up for a second, to explain how it's a little funny with Mr. Zorn.  If he's in a business role, and he's seeking legal advice, why is he the only attorney listed? If he's -- is he working in a business role in that circumstance and there's another attorney who's actually

14

providing a legal advice, or is it Mr. Zorn?  It's just -- it's very unclear to us.

And I think especially with -- I know there's a lot of comparison, too, but Pfizer, for example, is a much larger company.  There's a lot -- if there's some -- we had some -- we also identify there's several entries where no attorneys are identified in plaintiffs' log.  Pfizer is a much larger company.  I think there is a lot more -- when it says, like, a legal team, there is an actual team.  Whereas, is there --

THE COURT:  Uh-oh.  We lost her.

MR. CERRITO:  Does Your Honor have a special button you hit when you're tired of the argument?  You just hit it and that's it?

THE COURT:  I did not.  I know.

(Laughter)

THE COURT:  Oh, here we go.

MS. FUNDAKOWSKI:  I'm sorry, Your Honor.  Can you, can you hear me?

THE COURT:  Yeah.  Oh, yeah.  Someone -- someone — I won't say who — suggested that I was tired of listening to you, and I hit the eject button, but -- yeah.

(Laughter)

MS. FUNDAKOWSKI:  I'm showing my Italian.  I'm talking with my hands too much.  And I hit the power button.

But that was basically all, Your Honor.  I just

15

wanted to say, there are some differences among the companies where it's a little unclear to us why an attorney cannot be identified for some of their entries if they only had one in-house attorney.

Or if there is a firm, an outside counsel, why not specify the firm, rather than simply saying "outside counsel"? Just so that we can better assess what's actually going on here and really assess the privilege claim.

THE COURT:  Mr. Phillips?

MR. PHILLIPS:  Yes, Your Honor.

I think a comparison of our logs will show that both sides provide approximately the same level of detail as each other.  Going back at this point and revising the whole log would be an extremely burdensome exercise.

With respect to specific examples they raise, we are happy to respond to and, if necessary, amend specific log entries.

But to respond on a couple of points.  The point about "and/or" and vagueness between seeking legal advice, the optionality doesn't make it less legal.  The specific example, it is difficult to respond in the abstract to -- to -- when they just make broad claims about the log.  But to respond to specific examples, they have brought up two examples from the early 2000s in their letter where the documents -- the log entry says it's both -- I'm sorry -- seeking legal advice and

16

reflecting legal advice.  And those documents do, indeed, both seek legal advice and reflect legal advice because they are -- they are going to -- they are being sent to attorneys to seek the additional legal advice of attorneys and they -- as the -- the drafts, as they should, also reflect legal advice of attorneys.

So I think when you -- this kind of illustrates the conundrum we're in.  When they make these broad claims about the entirety of our log, we must respond at that high level.  And it's, I think, only fair to point out that our -- the level of detail we provide is very similar to the level of detail they provide.

If we engage on a specific document-by-document basis, we can actually assess whether it makes sense to either revise the log or de-privilege the document, if so called for.

So -- but happy to answer any additional questions Your Honor has.

THE COURT:  Yeah, it may be -- and, of course, I'll hear from the defendants.  It may be that because of Mr. Zorn's different roles, and if I heard correctly, that at least in some instances, it appears that they're seeking legal advice, but Mr. Zorn is the only one listed on the log, and maybe that he's acting in his business capacity.  So the concern is what does that mean in terms of legal advice?

So on defendants' side, do you have a number?  I know

17

there's been so many issues that have been raised.  Do you have a number of how many specific designations are of concern?

MS. FUNDAKOWSKI:  I do not have the exact number.  I know it really is a fraction.  There's over 10,000 entries on plaintiffs' privilege log.  This is a small fraction.  It's, I would say, hundreds, but I do not have an exact number.

But I do think if plaintiffs are willing to -- we don't -- I -- we're not trying to have them revise everything on the log.  If they could provide clarity for the ones that we identified, and we could take a look to see if there are some further narrowing we could do from the entries that we identified in our letter briefing, I think that would be a very helpful big step.

THE COURT:  Do you --

MR. PHILLIPS:  Your Honor, just to give you -- apologies, Your Honor.

THE COURT:  Yeah, I'm sorry.  Go ahead, Mr. Phillips.

MR. PHILLIPS:  I didn't mean to cut you off.

THE COURT:  Go ahead.

MR. PHILLIPS:  Just to give you a sense of the scope of their challenge, the Zorn documents alone, the way their letter is framed, would implicate, I think, over 13 hundred documents on our log.  So it's just -- as -- I'd return to my point.  When they're challenging this large a swath of documents, it's very, very difficult to -- it would be

18

incredibly burdensome to go through every single one, and it's difficult to respond, other than at the high level that we have responded to, except with respect to those specific examples, which we're happy to offer specific responses to.

THE COURT:  Do you recall, on defendants' end, how many triggered your concern because of and/or?

MS. FUNDAKOWSKI:  I don't have the precise number.

THE COURT:  Okay.

MS. FUNDAKOWSKI:  I'm sorry, Your Honor.  But it definitely -- I think we could narrow the ones.  We did receive some assurances from plaintiffs' briefing about clarifying Mr. Zorn's role.  I'm sure we could narrow our requests further and ensure that it's in the one hundreds range and not over a thousand.

THE COURT:  Okay.  Why don't you give that a shot? And the reason I asked about the and/or is in the event that you need to present something to me because you folks are still at an impasse, if you could give me a sampling, then that might be the way to go.  If we're talking about my having to review 50, that's not a burden.  If we're getting to a hundred or so, I'd prefer not.  So that's why I was asking if there's also ways of putting, again, them into different buckets and give me a sampling.

So we'll have the plan that defendant will endeavor to identify as few as possible that raise concerns regarding

19

Mr. Zorn.

And then, Mr. Phillips, you will endeavor to provide more specificity.  If, Mr. Phillips, you have a concern about the number that you're being asked to identify and you want my input before you start the process, I'd rather get involved before rather than having you go through a review of some of them, answering some, and then you have to go back because I decide you need to do more.

So if you can't agree on the plan and how it's going -- the responses are going to come from plaintiff, then let me know.

MR. PHILLIPS:  Understood.  Thank you, Your Honor.

THE COURT:  Okay.  Anything else on the privilege issues?

I know you had some questions about in-house and outside counsel, vagueness.  I don't know if that's also involved in what you were just outlining.

MS. FUNDAKOWSKI:  Yeah, I think it's -- yes, Your Honor.  It's a bit interrelated, but just for clarification, if that could be part of the conferring with plaintiffs where we narrow down some of the entries that we think are vague for not specifying an attorney, I think we could endeavor to do that, as well.

THE COURT:  Okay.  And I know this is also an area where the plaintiffs had said, we've given the same type of

20

generic response as defendants.  But, again, I'll give you the opportunity to identify them and see if you can come to a resolution.

I think that was all on the privilege family documents, okay.

MS. FUNDAKOWSKI:  Yes, Your Honor.

THE COURT:  Okay.  So the next that is on my list is to compel the materials from the Moderna Litigation.  And so I guess one of the primary questions is whether or not the defendants' request is contrary to the agreement that you folks reached.  And I understand that there is a timing issue of what was the impact of the motion to amend or not on that agreement.  So I'm interested in hearing that; having you folks address that.

Well, let me start there.  I'll start again with defendants.

MS. KING:  Yes, Your Honor.  This is Allison King from Winston Taylor.

So I believe you're right, I think the main dispute is whether the parties' previous agreement with regard to documents from the Moderna Litigation should control here.

In our view, it should not.  And that's because there was a material change after those negotiations occurred, which was Your Honor granting defendants' motion to add an indefiniteness argument into this case where these documents

64

THE COURT:  Okay.  So, Mr. Klein, I may be stealing your day in the spotlight.  I think that it's probably best to save argument on Dr. Sahin until after other deps have been conducted.

I am not deciding on either of the doctors' depositions.  I leave it to you folks to come back to me when you believe you're ready to conduct them, and then we can have a more pointed discussion about whether or not they really are -- the depositions are necessary or warranted under the case law and based on the other information that you've already been able to cull together.  And perhaps you'll decide you don't need the deps.  Who knows?

And I think that's all that I want to address in terms of argument.  I know that there's -- and by the way, I've been apologizing, and I'm going to continue to do so, that it's taken so long.  You've been after me since October, if not earlier, with a myriad of issues.  And, yes, I often do -- when I get packets like this, I often put you to the bottom of the pile for a day when I have time, and then coordinate with my very able law clerk.

That being said, I'm interested in moving you.  I don't know if you're in a position to begin depositions.  I don't fault you for not having conducted them because there are some loose ends in terms of paper discovery, in particular, what we just talked about today.

65

Long-winded way of asking, do you feel like you're in the position to begin depositions?  Or do you think that it's safer to wait for the decisions on the document discovery that are still --

MR. STOPS:  Your Honor --

MR. CERRITO:  Yeah, I think --

MR. STOPS:  -- a lot of the --

MR. CERRITO:  Sorry.

MR. STOPS:  I'm sorry.  I was going to say -- I think we're saying the exact same thing.  A lot of the pending motions are sort of gating both on documents and subject matter, unfortunately.

MR. CERRITO:  Yeah, 30(b)(6) notices.  It's sort of where we were in March when we had this discussion.  We -- I don't know, defendants, I don't think will say anything different.  A lot of these have gating issues with regard to both the documents and 30(b)(6) topics and breadth, if you will.

THE COURT:  Okay.  My plan is to sit with my clerk next week, make sure that -- well, put together a list of what we need to address; address what's ripe.  I'll get an update from you folks.  I don't want to put tough time frames on you, especially, you know, "hurry up and then wait for me."

So just give me a pulse check in a couple weeks, maybe in two weeks, as to where you are with what we talked

66

about today; seeing if we can narrow the privilege issues.

And then in the meantime, I will try to do a rolling ruling to get you folks at least some of the decisions.

Then when I believe I'm done, I will tell you I believe this is it, other than these two depositions for sure, which we're tabling for now.  And then you'll let me know that I've overlooked a myriad of other issues.

But you are a priority.  Unfortunately -- and I'm playing my violin -- July has been tough because I'm on criminal duty, and I have no control over what the marshals bring to me.

So I'm setting aside a block of time next week, whether or not that gets eroded -- yeah, I'm giving myself a headache about how busy I am.

So, anyway, on plaintiffs' end, anything I miss that you want to raise?  You're on mute, Nick.

MR. RICHTER:  Nick -- Nick, you're on mute.

MR. CERRITO:  I'm sorry.  My wife would like that button to be permanent.

THE COURT:  Yeah, we weren't sorry.

(Laughter)

MR. CERRITO:  No, nothing.  Nothing, Your Honor.  We appreciate your time with us today.  And, again, I know we got it -- we threw a lot of stuff at you, but, obviously, it's all important.  It's an important case.

67

THE COURT:  And before --

MR. RICHTER:  Your Honor, I --

THE COURT:  Before I hear from -- go ahead, sorry. Go ahead.

MR. RICHTER:  Your Honor, I apologize; one administrative issue.  The case has been administratively terminated by Judge Quraishi.

MR. STOPS:  Oh, right.

MR. RICHTER:  So I just -- will that be -- will the case be reinstated now?  I understood it was going to be reinstated after today or?

THE COURT:  Let me reinstate it when I get a bulk of the rulings out, because I don't want to eat into the time. And I think some of you understand, it doesn't have an impact on what you're doing.  It's just a statistical in-house.

But thank you, Mr. Richter.

MR. RICHTER:  Sure.

THE COURT:  And you can remind me, in the event I forget to do it again after I get some of these rulings, and you guys can get moving.

MR. RICHTER:  Thank you, Your Honor.

THE COURT:  All right.  Anything on defendants' side that I missed?

MR. KLEIN:  No, Your Honor; thank you.

THE COURT:  Okay.  And I always like to emphasize

68

that I really so appreciate the way that you're bringing your issues to me.  You're speaking about the issues.  There's no chewing on the other person's ankle.  And I can't emphasize enough how appreciative I am personally, and I'm sure every judge is, as well.  I've been known when lawyers start screaming at each other, I hang up.  Disconnect because I just can't do it.

So thank you very much.  You make this part easy.  I wish you well.  I'm so sorry to have done this to you on a Friday.  And this late in the afternoon.  Go out and enjoy the wildfires of Canada.  Got to get those masks out again.

Thanks, everyone.

MULTIPLE SPEAKERS:  Thank you, Your Honor.

(Whereupon, at 2:44 p.m., the hearing was adjourned.)

CERTIFICATE OF TRANSCRIBER

I, KAREN HARTMANN, a certified Electronic Court Transcriber, certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

   /s/ *Karen Hartmann*

Karen Hartmann, AAERT CET  Date:  July 28, 2026

TRANSCRIPTS PLUS, INC.